**APACHE MOTOR COMPANY and Hardware Mutual Casualty Company, Petitioners,**

v.

**Ella ELLIOTT and the State Industrial Court, Respondents.**

No. 41042.

Supreme Court of Oklahoma.

June 29, 1965.

Rehearing Denied Sept. 14, 1965.

Ben A. Goff, Oklahoma City, for petitioners.

Shultz & Ivy, by Red Ivy, Chickasha, Charles R. Nesbitt, State Atty. Gen., Oklahoma City, for respondents.

DAVISON, Justice.

This is an original proceeding by Apache Motor Company, employer, and its insurance carrier, Hardware Mutual Casualty Company, hereinafter referred to as petitioners, to review an order of the State Industrial Court awarding compensation to Ella Elliott, claimant, under the death benefit provisions of the Workmen's Compensation Act.

The record discloses that on January 31, 1963, claimant and her now deceased husband, Ralph Elliott, were the sole members of a partnership engaged in a number of business ventures in and around Apache, Oklahoma, one of which was the operation of the Apache Motor Company, a Chevrolet automobile dealership. In addition to selling new and used cars, it also maintained a general garage for the overhauling and repairing of automobiles and, in conjunction therewith, operated two gasoline pumps for servicing its new and used cars and also for the sale of gasoline to the general public.

Claimant testified that her husband did "any and everything that had to be done" around the business such as opening up in the morning, wiping off cars and doing mechanic work; that he kept a tractor at the place of business and operated it himself, pulling in "stalled" cars, moving cars from one place to another about the premises and grading the parking lot.

Claimant testified further that the partnership had bought a lot across the street from its location and decided to make a parking lot out of it for its used cars; that they decided also to move the two gasoline pumps to that lot; that on the above date, her husband was operating the tractor, cleaning off the lot, pulling concrete slabs when the tractor turned over, killing him almost instantly.

Claimant testified on cross-examination that Verlin Mills, who sold them the insurance policy in question herein, knew that deceased operated the tractor about the place of business and had known of this fact for years; that she did not know whether Mr. Mills knew deceased was using the tractor to clear the lot where he was killed; that Mr. Mills told them they were insured "regardless of what we had, farm and buildings * * * and our help we were insured" and that they were covered in "regard to construction activity," "regardless what we did." She also testified the purpose in clearing the lot was that it was to be used in connection with the operation of the Apache Motor Company and not for the construction of a service station for lease to third parties. She admitted, however, that about a month after her husband's death, she signed a statement to the effect that she and her husband were going to build a service station on the lot and lease it to a Mr. Charles Dixon when it was finished.

Cecil Dunbar testified on behalf of claimant. His testimony was that he had known deceased for about 15 years and that he had seen deceased operating the tractor about the place of business many times. Nelson Morris also testified to the same effect.

John Holcomb testified for claimant. He stated he was working with deceased on the day he was killed; that deceased was clearing the location for the purpose of moving the two gasoline pumps from across the

street and making a car parking lot out of said lot; that he too had seen deceased use the tractor about the premises.

Olen Elliott testified he was the son of deceased; that he was helping his father on the day he was killed and that the lot was to be used for "a car lot and gas pump" in connection with the Apache Motor Company; and that on occasions he saw his father use the tractor to level the parking lot adjoining the garage.

Claimant also introduced into evidence a standard workmen's compensation and employer's liability insurance policy issued by carrier to employer, bearing No. 35–08330–012, covering the period of time from June 10, 1962, to June 10, 1963. The policy revealed the following classification of operations and who was covered:

"Automobile Garages or repair shops: All employees other than automobile salesmen—including parts department employees, drivers

Gasoline Stations — retail — including drivers

Clerical office employees NOC

Ralph Elliott—Partner

Ella Elliott—Partner

Voluntary compensation as per endorsement

Farms—all employees other than inservants—including drivers, chauffeurs and their helpers."

The policy set forth the premium basis, rates, and estimated annual premiums for each classification. The premium on deceased was $78.12.

Petitioners introduced into evidence the deposition of Verlin Mills. His testimony was that he had sold the above policy to employer; that he never told the partnership it would be covered under the policy regardless of the occupation it was engaged in; that he did discuss with the partners the activities covered under the policy which were "automobile, garages and repair shop, gasoline stations, retail, clerical office em-

ployees and voluntary compensation for their farm employees;" that he was never aware of deceased being engaged in "construction activities" until after his death.

On cross-examination, the witness testified that he had "dropped" in the Apache Motor Company on numerous occasions and discussed "matters" with the partners; that he had never seen the deceased operate any tractor.

A trial judge of the State Industrial Court made the following findings and order:

"On Jan. 31, 1963, Ralph Elliott was in the employ of respondent, engaged in a hazardous occupation, within the meaning of the Workmen's Compensation Law and on said date sustained an accidental injury, arising out of and in the course of his employment, resulting in his death on said date.

"That Ralph Elliott was a partner and that the Insurance Company collected premium on the partnership and that claimant was covered by reason of the collection of said premium.

"That Ralph Elliott left surviving him, his widow, Ella Elliott; and that by reason of the accidental injury and resulting death of Ralph Elliott, his widow, is entitled to recover from respondent or insurance carrier the sum of $13,500.00, less $2275.00 attorney fee."

The order was affirmed on appeal by the court en banc.

Petitioners advance three propositions for reversal of the lower court's order. They will be considered in the order presented.

Petitioners' first contention is the order is inadequate to support the award because there is no finding that deceased was specifically endorsed on the insurance policy and that there was no evidence in the record to support such a finding; that in order for a partner to come within the jurisdiction of the Industrial Court, the partner must be specifically endorsed upon the policy. Pe-

titioners cite the case of Employers Casualty Co. v. Carpenter. Bros., 204 Okl. 312, 229 P.2d 592, in support of this contention.

The Carpenter Brothers, case, supra, is not analogous to the question herein presented for the reasons: (1) that case was decided before 85 O.S.1961, § 3, par. (4), was amended in 1959 to permit a partnership to include its members as employees by endorsement to the policy of insurance; and (2) there was no evidence in the cited case that the claimant's employment was considered and used in determining the amount of premium paid.

85 O.S.1961, § 3, par. (4), provides in part as follows:

"*  *  *  a partnership may elect to include any and all of its members as employees, if otherwise qualified, by endorsement to the policy specifically including them under any policy of insurance covering benefits under this act, and when so included such members shall be deemed to be employees as respects the benefits of this act. *  *  *"

■ The policy shows on its face that the deceased was specifically endorsed thereon for the purpose of being included as an employee of the partnership; the evidence stands uncontradicted that the carrier collected and retained the premium on deceased as an employee. Therefore, the deceased partner was an employee as contemplated by the above quoted statute "as respects the benefits of this act." We feel the lower court made such determination when it found that deceased was an employee of Apache Motor Company and "covered by reason of the collection of said premium" and the evidence amply supports the finding.

Petitioners' second point is there was no evidence to support the finding that deceased at the time of his death was engaged in a hazardous employment within the meaning of the Workmen's Compensation Act and since he was a partner, he was not in the "class of partners which the legislature said could come under the act by endorsement on

a workmen's compensation policy;" that a partner must be engaged as an employee in a hazardous employment as a condition precedent to the election of endorsement and if not, even though a compensation insurance policy be in effect and endorsement made, the carrier is not estopped to deny the occupation is hazardous.

There is no merit to this argument. In the first instant, we have held in the cases of City of Tulsa v. State Industrial Commission, Okl., 316 P.2d 612; Board of County Commissioners v. Horne, Okl., 288 P.2d 406; Folson Auto Supply v. Bristow, Okl., 275 P.2d 706; and Gooldy v. Lawson, 155 Okl. 259, 9 P.2d 22, that a garage is a workshop or hazardous occupation within the meaning of the Workmen's Compensation Act. There is no dispute that the Apache Motor Company operated a garage for the repair and overhauling of automobiles. Such operation was classified in the insurance policy issued by carrier. At the hearing before the trial judge, counsel for petitioners stated that had the work deceased was doing at the time of his death been incidental with the operation of the garage "I think there probably would be coverage."

■ There was testimony the deceased was clearing off the lot for the purpose of moving the two gasoline pumps to it and making another parking lot out of that location and that such was to be used in connection with the Apache Motor Company; it was common knowledge that deceased used the tractor in connection with the operation of the garage. The evidence is sufficient to establish that deceased was engaged in a hazardous employment as that term is defined by Workmen's Compensation Law, 85 O.S.1961, § 2.

In the second instant petitioners cited no statute or other authority, and we know of none, where the so-called "Estoppel Act" would not apply to a partnership just as it does to a corporation or to an individually owned business.

85 O.S.1961, § 65.2, is as follows:

"*Every employer* and every insurance carrier who schedules any em-

ployee as a person employed by the employer for the purpose of paying or collecting insurance premiums on a Workmen's Compensation insurance policy or who pays, receives or collects any premiums upon any insurance policy covering the liability of such employer under the Workmen's Compensation Law by reason of or upon the basis of the employment of any such employee *shall be estopped to deny* that such employee was employed by the employer in a hazardous employment subject to and covered by the Workmen's Compensation Law if such person receives an accidental personal injury arising out of and in the course of his employment, during the period for which such premium was so received, regardless of the type of business in which the employer was engaged or the type of employment in which the employee was engaged at the time of such injury." (emphasis ours)

85 O.S.1961 § 3, par. (3), in part, is as follows:

"(3) *'Employer,'* except when otherwise expressly stated, *means* a person, *partnership,* * * *." (emphasis ours)

■ The Apache Motor Company, as employer, would therefore be estopped to deny that deceased was engaged in a hazardous employment, even if we had not found the evidence sufficient to establish that fact. The evidence reasonably supports the finding of the Industrial Court on this question.

Petitioners' third contention is that the insurance policy did not "describe either the occupation of the claimant (deceased) at the time of his death or the location at which he was injured; therefore, the State Industrial Court was in error in making an award against the Insurance Company;" that the "described location is particularly significant when operation sought to be covered is foreign to the declarations on the contract and is conducted away from the described location."

The policy describes deceased as an employee of the Apache Motor Company by endorsement as a partner. This is in keeping with 85 O.S.1961, § 3 (4), as heretofore discussed and all that is necessary to bring deceased within the terms of the contract of insurance as contemplated by 85 O.S.1961, § 65.3, which is as follows:

"Every contract of insurance issued by an insurance carrier for the purpose of insuring an employer against liability under the Workmen's Compensation Law shall be conclusively presumed to be a contract for the benefit of each and every person upon whom insurance premiums are paid, collected, or whose employment is considered or used in determination of the amount of premium collected upon such policy for the payment of benefits as provided by Workmen's Compensation Law regardless of the type of business in which the employer of such person is engaged or the type of work being performed by the employee at the time of any injury received by such employee arising out of and in the course of his employment, which contract may be enforced by such employee as the beneficiary thereof, before the State Industrial Commission as now provided by law."

The policy describes locations of operations of the Apache Motor Company as:

"All usual workplaces of the insured at or from which operations covered by this policy are located at the address shown in Item 1 unless otherwise stated herein."

Item 1 shows the address of Apache Motor Company to be 64–66 Coblake, Apache, Oklahoma. The evidence is undisputed that the location where deceased was killed was just across the street from the above address. The testimony is that the lot was

to be used in connection with the Apache Motor Company. The location at the time of death of deceased was a workplace from which operations covered by the policy were conducted.

Petitioners' assertion amounts to the implication that for the policy to be effective all of the work done must have been done at 64-66 Coblake. To follow this deduction would deny coverage to all the employees of Apache Motor Company when they were away from the stated address regardless of their mission, be it towing in a disabled automobile or working on one a block away. This would also deny coverage to the farm employees classified in the policy because certainly their labors were not done at the listed address.

Petitioners' argument for the purpose of vacating the lower court's award revolves around their conclusion that the work deceased was doing was the construction of a filling station and that such "construction activities" were not covered by the policy. Also that the work of the deceased at the time of his death was not incidental to the operation of the Apache Motor Company.

■ This court is committed to the rule that although the State Industrial Commission does not have the power of courts of general jurisdiction to construe and determine liability under contracts generally, it is vested with authority to determine the liability of an insurance carrier to an insured's injured employee, who has filed a claim for benefits under a policy of Workmen's Compensation insurance and, if it becomes necessary as an incident to such determination, to also interpret or construe the policy, it may do so. Barney U. Brown & Sons v. Savage, Okl., 258 P.2d 183.

■ We conclude that the holding of the State Industrial Court that the work of deceased at the time of his death was incidental to the operation of the Apache Motor Company and was covered by the policy of insurance involved herein was amply and adequately supported by the evidence.

Award sustained.